UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

HARIS MUJEZINOVIC, CHARLIE MILLER, and
JOHN FLOWERS, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                                                                  No. 1:24-cv-01827-RLY-MG

THE TRUSTEES OF INDIANA UNIVERSITY,
and TIM GARL, in his individual capacity,

        Defendants.

## DECLARATION OF JOHN R. MALEY

I, John R. Maley, being a competent adult, affirm under penalties of perjury to the following facts of which I have personal knowledge.

### Background

**1)** I am a partner with the firm of Barnes & Thornburg LLP, and serve as lead counsel for Defendant Trustees of Indiana University ("IU"), in the above-captioned case, where Plaintiffs' operative (First Amended) Complaint [ECF69] features three Plaintiffs asserting, *e.g.*, two Title-IX claims against IU for alleged facts from the 1980s and 1990s, and their proposed Second Amended Complaint [ECF106-1] features four Plaintiffs asserting against IU the same Title-IX claims as well as state-law claims of "Respondeat Superior" and "Negligence" based on the same alleged facts from decades ago.

**2)** I have been practicing law for 37 years, with an emphasis on federal civil practice, both in Indiana and across the nation. I regularly write, teach, and lecture on federal civil practice, including with respect to discovery. Having been counsel of record in hundreds of cases in federal court, I

regularly manage and work on discovery, and am familiar with the specific burdens and challenges associated with discovery, including in putative class actions.

## Plaintiffs' Initial Discovery Requests

**3)** Based upon my own participation in and management of IU's defense in this action, I have personal familiarity with the nature, scope, and extent of the actual and anticipated work for IU and the discovery that Plaintiffs have conducted and served in this matter. Such discovery includes the expedited deposition that Plaintiffs conducted of Dr. Bomba, Sr., on December 4, 2024, as well as the "first" discovery requests that Plaintiffs served on IU on December 30, 2024.

**4)** Plaintiffs' "first" discovery requests to IU include:

a) 39 Requests for Production of Documents, or RFPs [**Ex. 1** (listing 38 RFP); **Ex. 2** at 5 (adding 39th RFP)];

b) at least 21 Interrogatories [**Ex. 3** (listing 20 Interrogatories, some with multiple sub-parts); **Ex. 2** at 5 (adding 21st Interrogatory)]; and

c) 19 Requests for Admission [**Ex. 2**].[1]

**5)** I understand that much, if not the vast majority, of Plaintiffs' first discovery set targets material and information from multiple decades ago. [*See generally* **Ex. 1–3**] For example, according to "Instructions" Plaintiffs provided with their discovery, their RFPs and Interrogatories "refer to … the time period of January 1, 1979, through January 1, 2001, unless a different date is specified or apparent from the context of the" RFP or Interrogatory. [**Ex. 1** at 2; **Ex. 3** at 2] Notably, Plaintiffs' "Instructions" also purportedly demand that "[w]here exact information cannot be furnished, estimated information *is* to be supplied to the extent possible. Where estimation is used, it should be so indicated, and an explanation should be given as to the basis on which the estimate was made, and the reason exact information cannot be furnished." [**Ex. 1** at 2; **Ex. 3** at 2]

---

[1] These Exhibits (**Exs. 1–3**), and all other Exhibits to this Declaration, are true and accurate copies of the documents herein referenced and described, and are being submitted today with the same filing to which this Declaration is attached.

6) Multiple factors only compound the extraordinary burdens of the multi-decade scope of Plaintiffs' initial requests. For example, although some (not all) Plaintiffs have tendered forms granting "Authorization to Release Protected Health Information" (*via* "Fax" or "Paper," not "Electronic Access"), Plaintiffs' initial discovery seeks information about medical care of others. RFP 32, for example, seeks "***any and all documents or communications related to or regarding any medical care*** provided by Dr. Bradford Bomba, Sr. to ***any IU men's basketball team member*** in connection with injuries sustained during practices." [**Ex. 1** at 12 (emphases added)]

7) Further, although Plaintiffs claim to have interacted with Dr. Bomba, Sr., while playing for IU men's basketball for several years in the 1980s and 1990s [*see generally* ECF69]—and although they wish to represent a putative class of "[a]ll former Indiana University men's basketball players who were sexually assaulted by Dr. Bradford Bomba, Sr. …" [ECF69, ¶107]—Plaintiffs have served numerous requests seeking information regarding IU "student athletes" and/or IU medical providers generally.[2]

8) In addition, multiple requests are specifically framed with reference to IU's in-house and/or outside counsel. For instance:

    a) RFP 28 seeks "any and all communications by and between Defendant, including but not limited to Defendant's counsel, and any attorney, agent, contractor, or

---

[2] *See, e.g.*, **Ex. 1 at 8–9,13,** (RFP 35 seeking "any and all documents or communications related to or regarding any policies, procedures, guidance, or best practices provided by Defendant to ***any medical service provider*** who provided medical care to ***any IU student athletes***"; RFP 17 seeking "all referral forms utilized by IU for the purpose of requesting medical services for ***student athletes*** by ***any*** medical services provider, including but not limited to Dr. Bradford Bomba, Sr."); RFP 18 seeking "all 'clearance' or other such forms utilized by IU for the purposes of permitting ***student athletes*** to return to play following an injury or illness"; RFP 16 seeking "any forms created by Dr. Bradford Bomba, Sr.; Defendant; and/or ***any employee, agent, or contractor of Defendant*** regarding, related to, or used in connection with physical examinations of ***IU student athletes***, including but not limited to IU men's basketball team members." (emphs. added)); **Ex. 3** at 5,7 (Interrogatory 7 stating, "For the relevant time period, Identify all individuals IU has contracted with or employed as a ***team physician for student athletes*** at IU's Bloomington campus"; Interrogatory 9 stating, "For the relevant time period, Identify all policies and procedures, including amendments, requiring annual physical examinations for ***student athletes*** within the context of their participation in IU's sports programs," and broadly defining "'[p]olicies'" or "'procedures'" to "refer to any rule, directive, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was or is recognized by Defendant" (emphs. added)).

3

    affiliate of Jones Day [which, upon pre-litigation receipt of Plaintiffs' counsel's allegations, IU has "retained … to conduct an independent review" [https://news.iu.edu/live/news/37882-indiana-university-statement-on-independent-review (cited by ECF69, ¶9 n.4)]] related to or regarding the allegations in this lawsuit and/or Jones Day's independent investigation of the allegations contained in this lawsuit and in the August 28, 2024, letter from Kathleen DeLaney to [IU's Vice President and General Counsel] Anthony Prather *Re: Haris Mujezinovic v. The Trustees of Indiana University*" [**Ex. 1** at 11–12];

  **b)** RFP 29 seeks "any and all communications by and between any of Defendant's agents, employees, contractors, or affiliates related to or regarding this lawsuit, the allegations in this lawsuit, Jones Day's independent investigation of the allegations contained in this lawsuit and/or in the August 28, 2024, letter from Kathleen A. DeLaney to R. Anthony Prather *Re: Haris Mujezinovic v. The Trustees of Indiana University*, and/or Dr. Bradford Bomba, Sr." [**Ex. 1** at 11–12];

  **c)** Interrogatory 13 states, "Describe all actions taken by Defendant, if any, to investigate the allegations as set forth in attorney Kathleen A. DeLaney's August 28, 2024, letter to [IU's Vice President and General Counsel] R. Anthony Prather" [**Ex. 3** at 8; *see also* Ex. 1 at 7,10 (aiming various requests, such as RFPs 11 & 22, at IU's internal decision-making)].

### Estimates on Time and Fees for Certain Initial Discovery Work

**9)** With respect to Plaintiffs' initial 79+ requests, discovery response and production work will be extraordinarily burdensome and expensive, requiring intensive labor from multiple sources including IU's outside litigation Barnes & Thornburg team ("BTLaw Team"), IU's small in-house legal team, and IU's non-lawyer personnel.

**10)** IU's BTLaw Team for this matter has multiple timekeepers, including myself, Partner Dylan Pittman, Associate Amanda Gallagher, Associate Charity Seaborn, and Paralegal Cathy Reed.

**11)** From IU's BTLaw Team alone, I estimate that Plaintiffs' "first" wave of 79+ requests will require discovery response and production work likely spanning well over one hundred total hours. Such work is anticipated to include analyzing the requests not only for proportionality to the operative Complaint but also for privilege, work-product protection, and other protections (*e.g.*, HIPAA); collaborating with and guiding IU's legal department as it coordinates search and collection efforts among internal resources; intaking and reviewing any potentially responsive, discoverable

4

material that is located and collected; and preparing any responsive, discoverable material for production (logging privilege and redacting as appropriate) along with written responses.

12) Beyond additional written discovery that would likely occur in discovery, multiple depositions are likely. Indeed, this is particularly true given Plaintiffs' November 13, 2024 Tort Claims Notice [**Ex. 4**] that identifies *at least 120* individuals as allegedly "involved," many of whom are or were IU employees, and 97 of whom are allegedly "potential class members."

13) Preparing for and defending depositions takes time and is expensive. Meanwhile, Plaintiffs would be deposed, which is likewise time-consuming and expensive.

14) Based on my professional experience, in a case of this nature I expect such discovery to require more than $100,000 in legal fees, with additional expenses from court reporters and videographers. Nor do the above estimates account for the IU employee time and IU resources that IU would need to expend internally to address discovery. In addition, any deposition Plaintiffs take of an IU employee will necessarily divert substantial witness and other internal IU time and resources away from IU operations, disrupting IU's normal course of business.

15) That IU, after receiving Plaintiffs' counsel's litigation-threat letter, engaged a separate law firm to conduct an independent investigation [https://news.iu.edu/live/news/37882-indiana-university-statement-on-independent-review (cited by ECF69, ¶9 n.4)] does not obviate the above processes or estimates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, executed this 17th day of March, 2025.

*s/John R. Maley*<br>John R. Maley