UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HARIS MUJEZINOVIC individually and on behalf of all others similarly situated, CHARLIE MILLER individually and on behalf of all others similarly situated, JOHN FLOWERS,<br><br>Plaintiffs,<br><br>v.<br><br>TRUSTEES OF INDIANA UNIVERSITY, TIM GARL,<br><br>Defendants.<br><hr>JOSEPH T. BOMBA,<br><br>Interested Party. | No. 1:24-cv-01827-RLY-MG |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DR. BRADFORD BOMBA, SR.'S ANSWERS TO CERTIFIED DEPOSITION QUESTIONS**

Pending before the Court is Plaintiff's Motion to Compel Dr. Bradford Bomba, Sr.'s Answers to Certified Deposition Questions, [Filing No. 52]. The Motion is **GRANTED** in part and **DENIED** in part.

**I.**
**BACKGROUND**

Non-Party Dr. Bomba, Sr.'s alleged conduct is at the heart of this class action against Trustees of Indiana University and individual Defendant Tim Garl. As part of discovery, Plaintiffs sought Dr. Bomba, Sr.'s deposition. Following an extensive meet and confer process, Dr. Bomba, Sr.'s counsel filed a motion to quash Dr. Bomba Sr.'s deposition notice. The undersigned held a

hearing on the Motion to Quash, where he assessed Dr. Bomba Sr.'s competency to testify and ultimately denied the Motion to Quash, finding Dr. Bomba Sr. competent to sit for his deposition and follow attorney advice. [Filing No. 46.] One issue discussed at the hearing was whether Dr. Bomba, Sr. would be capable of understanding and invoking his Fifth Amendment rights. [Filing No. 46, n.1.]

During the deposition, on the advice of counsel, Dr. Bomba, Sr. invoked his Fifth Amendment right and refused to answer more than 45 questions.[1] [Filing No. 53 at 1-2.] He argues that because Indiana University has referred the matter to the Monroe County Prosecutor's Office, Dr. Bomba, Sr. is "under realistic threat of state and federal criminal prosecution." [Filing No. 75 at 2.] Plaintiffs ask the Court to analyze whether Dr. Bomba, Sr.'s invocation of the Fifth Amendment to refuse to answer certain deposition questions in this civil proceeding was proper. [Filing No. 53, Filing No. 80.] They argue it was not and seek to re-open his deposition.

## II.
### LEGAL STANDARD

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. "[T]he Fifth Amendment privilege against self-incrimination has long been held to extend to compelling answers by parties or witnesses in civil litigation [and it] applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *Nat'l Acceptance Co. of Am. V.*

---

[1] In response to the questions, his counsel stated: "Dr. Bomba respectfully declines to answer the question based upon the rights conferred upon him under the 5th and 14th Amendments of the United States Constitution and Article I, Section 14 of the Constitution of Indiana." [Filing No. 51 at 2.] "Each time, Plaintiffs' counsel asked Dr. Bomba, Sr. whether he was refusing to answer, he confirmed that he was, and Plaintiffs' counsel certified the question. In no instance did Dr. Bomba, Sr.'s counsel withdraw or reconsider any objection or instruction not to answer." [Filing No. 51 at 2.]

*Barthalter*, 705 F.2d 924, 926-27 (7th. Cir. 1983) (internal quotation marks omitted). The privilege extends to answers that would implicate the witness in a crime or furnish a link in the chain of evidence needed to prosecute the witness for a crime. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Whether a person has properly invoked the privilege is ultimately a question for the Court to decide. *Id.* ("It is for the court to say whether [a person's] silence is justified."). "Courts must liberally construe the privilege . . . in favor of the right it was intended to secure." *Id.* However, the protection . . . is limited to instances in which the witness has reasonable cause to apprehend danger from a direct question. *Id.* The Fifth Amendment does not provide carte blanche to refuse to answer all questions. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002).

"[A]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further incrimination." *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872-73 (7th Cir. 1979). In other words, whether the privilege may be invoked must be decided on a question-by-question-basis. *Barnett v. Stern*, 1987 WL 8596, at *2 (N.D. Ill. March 27, 1987).

### III.
#### ANALYSIS AND INSTRUCTIONS

It is clear Dr. Bomba, Sr.'s counsel cautiously took a "broad strokes" approach to Fifth Amendment privilege and advised his client to refuse to respond to some benign and routine questions. (For instance, counsel advised Dr. Bomba, Sr. to invoke the Fifth Amendment in response to, "Do you know what Title IX is?"). This approach is incompatible with the governing law and common-sense lawyering. "Even where a witness is actively under criminal indictment or investigation, a judge cannot presume that any response to all possible questions would tend to be incriminating." *Shakman v. Democratic Org. of Cook Cnty.*, 920 F. Supp. 2d 881, 888 (N.D. Ill.

3

2013) (noting that [deponent's] "blunderbuss approach has left the Court guessing at which questions might elicit answers that could be incriminating. This is not a proper assertion of the privilege.").

*Shakman* is instructive. There, the deponent refused to answer more than 750 deposition questions, far more than the number at issue here. However, the Court considered her invocation of privilege in response to straightforward questions about Cook County's hiring policies and procedures (Q: Can you briefly describe the screening process in Cook County?), as well as whether she knew certain individuals (Q: How long have you known Betty Torres? Q: How long did you work with Annette McCauley?"). The Court found these "facially innocuous" questions not likely to elicit "an incriminating link in the chain of evidence." *Shakman*, 920 F. Supp. 2d at 889.

Here, Dr. Bomba Sr. says the ongoing investigation by Monroe County Prosecutor's Office justifies his refusal to answer. Even so, each invocation of the Fifth Amendment must be supported by some "credible reason why a response would pose a real danger of incrimination" and not just a "'remote and speculative possibility.'" *Wachovia Securities, LLC v. Neuhauser,* No. 04 C 3082, 2011 WL 1465653, at *2 (N.D.Ill. April 18, 2011) (quoting *Martin–Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.1980)).

As such, the Court must evaluate each question to determine the properness of the privilege:

1. **Questions about Dr. Bomba, Sr.'s Performance of Annual Physical Examinations**

    a. *"You told us that you performed annual physicals each year for each men's basketball player as a condition of them playing basketball at I.U., correct?"* (Ex. 1, Bomba, Sr. Dep. 18:10-23)

This question does not credibly call for incriminating testimony. And the Court agrees Dr. Bomba, Sr. waived his Fifth Amendment right by answering this question earlier in the deposition. *Shakman*, 920 F. Supp. 2d at 893. Plaintiffs' request to compel a response to this question is **GRANTED**.

> b. "Dr. Bomba, why would a young elite student athlete need an annual physical?" (Ex. 1, Bomba, Sr. Dep.,18:24-19:10)

This question does not credibly call for incriminating testimony. It was already established that the University required yearly physicals. Moreover, many college athletes are required to undergo a yearly physical—the propriety of the practice of yearly physicals themselves is not in dispute nor is it incriminating. Plaintiffs' request to compel a response is **GRANTED**.

> c. "Dr. Bomba, would you please explain what you did for an annual physical for a men's basketball player while you were the team physician?" (Ex. 1, Bomba, Sr. Dep. 19:12- 25)

The Court finds the response to this question could credibly elicit incriminating testimony. Dr. Bomba, Sr.'s annual physical exams are at the heart of Plaintiffs' case and presumably, the Monroe County Prosecutor's investigation. Given the context of the case, the Court disagrees this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

> d. "As part of your routine annual physical exams of men's basketball players did you check their vital signs?" (Ex. 1, Bomba, Sr. Dep. 20:1-13)

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

> e. "Dr. Bomba, how long did an annual physical take on average when you were performing them for the men's basketball team?" (Ex. 1, Bomba, Sr. Dep. 20:14- 21:1)

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

  f. *"Did you ever perform physical exams on students who were not student athletes at I.U.?"* (Ex. 1, Bomba, Sr. Dep. 21:2-12)

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel an answer to this question is **GRANTED**.

  g. *"On the form that the athletic department provided you for doing annual physical exams, did it ask you to perform a digital rectal exam?"* (Ex. 1, Bomba, Sr. Dep. 21:25-22:11)

The Court finds the response to this question could credibly elicit incriminating testimony. These digital rectal exams are the heart of Plaintiffs' case and presumably, the Monroe County Prosecutor's investigation. Given the context of the case, the Court disagrees this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

2. **Questions About Dr. Bomba, Sr.'s Communications and Interactions with Former IU Men's Basketball Head Coach Bob Knight**

  a. *"Dr. Bomba, did you ever talk with Coach Knight about any digital rectal exam you performed on any individual player?"* (Ex. 1, Bomba, Sr. Dep. 25:11-23)

The Court finds the response to this question could credibly elicit incriminating testimony. These digital rectal exams are the heart of Plaintiffs' case and presumably, the Monroe County Prosecutor's investigation. Given the context of the case, the Court disagrees this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

  b. *"Did Coach Knight express an interest to you in the overall health of his players?"* (Ex. 1, Bomba, Sr. Dep. 30:11-22)

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

  c. *"Dr. Bomba, did you ever talk to Coach Knight about the health status or injuries of any of his players?"* (Ex. 1, Bomba, Sr. Dep. 45:3-15)

This question does not credibly call for incriminating testimony. This question should not have elicited a Fifth Amendment response. Plaintiffs' request to compel a response is **GRANTED**.

    d. *"Dr. Bomba, did Coach Knight ever tell you to do a digital rectal exam or a prostate exam on any player?" (Ex. 1, Bomba, Sr. Dep. 45:16-46:3)*

The Court finds the response to this question could credibly elicit incriminating testimony. These digital rectal exams are the heart of Plaintiff's case and presumably, the Monroe County Prosecutor's investigation. Given the context of the case, the Court disagrees this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

    e. *"Dr. Bomba, did you ever watch film or video of practices or games with Coach Knight?" (Ex. 1, Bomba, Sr. Dep. 46:5-15)*

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

    f. *"Dr. Bomba, did you travel with the I.U. men's basketball team to games in Illinois?" (Ex. 1, Bomba, Sr. Dep. 46:16-25)*

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

3. **Questions About Contraindications, Diagnoses, Tests, and other General Medical Care**

    a. *"Dr. Bomba, is the presence of hemorrhoids a contraindication for a digital rectal exam?" (Ex. 1, Bomba, Sr. Dep. 23:25-24:10)*

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba, Sr. These questions do not just relate to his general provision of medical care—their answers are aggregate links that could be used to establish a case against Dr. Bomba, Sr., if he was indeed performing exams that were

7

contradicted, unnecessary, and subjected student athletes to bodily violation. Plaintiffs' request to compel an answer to this question is **DENIED**.

> b. *"Dr. Bomba, without identifying any individual patient, at any time while you were the team doctor at I.U. did you diagnose a student athlete with prostate cancer?" (Ex. 1, Bomba, Sr. Dep. 26:11-24)*

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba. Plaintiffs' request to compel an answer to this question is **DENIED**.

> c. *"Dr. Bomba, at any time while you were the team doctor at I.U. did you ever diagnose a student athlete with prostatitis?" (Ex. 1, Bomba, Sr. Dep. 26:25- 27:12)*

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba. Plaintiffs' request to compel an answer to this question is **DENIED**.

> d. *"Dr. Bomba, in all of the time that you worked at I.U. did you ever diagnose a student athlete with a tumor of the anus, rectum, prostate, or colon?" (Ex. 1, Bomba, Sr. Dep. 27:13- 25)*

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba. Plaintiffs' request to compel an answer to this question is **DENIED**.

> e. *"Dr. Bomba, during all of the time that you worked at I.U. did you ever order a prostate specific antigen test for any student athlete?" (Ex. 1, Bomba, Sr. Dep. 28:1-13)*

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba. Plaintiffs' request to compel an answer to this question is **DENIED**.

> f. *"Did you do drug tests on student athletes at I.U.?" (Ex. 1, Bomba, Sr. Dep. 29:18-30:2)*

This question does not credibly call for incriminating testimony. Plaintiffs' request to compel a response is **GRANTED**.

> g. "Dr. Bomba, did you ever treat an I.U. men's basketball player who had been punched during practice?" (Ex. 1, Bomba, Sr. Dep. 40:11-23)

Although undoubtably sensitive, this question does not credibly call for a response that would incriminate Dr. Bomba, Sr. Plaintiffs' request to compel a response is **GRANTED**.

> h. "Dr. Bomba, did you ever treat a men's basketball player who had been beaten up during basketball practice?" (Ex. 1, Bomba, Sr. Dep. 40:25-41:12)

Although undoubtably sensitive, this question does not credibly call for a response that would incriminate Dr. Bomba, Sr. Plaintiffs' request to compel a response is **GRANTED**.

> i. "Dr. Bomba, did you ever report abuse of a student athlete to anyone?" (Ex. 1, Bomba, Sr. Dep. 41:13-24)

Although undoubtably sensitive, this question does not credibly call for a response that would incriminate Dr. Bomba, Sr. Plaintiffs' request to compel a response is **GRANTED**.

4. **Questions About Communications with IU Personnel, Training at IU, and Title IX Knowledge**

   > a. "Did you ever talk with any Indiana University personnel about digital rectal exams for student athletes?" (Ex. 1, Bomba, Sr. Dep. 34:9-21)

The Court finds the response to this question could credibly elicit incriminating testimony or furnish the link in a chain of evidence needed to prosecute Dr. Bomba, Sr. Plaintiffs' request to compel an answer to this question is **DENIED**.

   > b. "At any time during your years of affiliation with Indiana University did the University provide you with training of any kind?" (Ex. 1, Bomba, Sr. Dep. 34:22-35:8)

This question does not credibly call for incriminating testimony. This is a preliminary question about whether the University provided Dr. Bomba, Sr. with training—any training. The

9

Court can imagine how a number of follow up questions could veer into protected territory, but this straightforward question does not. Plaintiffs' request to compel a response is **GRANTED**.

> c. *"Did Indiana University ever pay for you to attend a conference or a seminar or any type of training?" (Ex. 1, Bomba, Sr. Dep. 35:9-20)*

This question does not credibly call for incriminating testimony. This is a preliminary question about whether the University provided Dr. Bomba, Sr. with training—any training. The Court can imagine how a number of follow up questions could veer into protected territory, but this straightforward question does not. Plaintiffs' request to compel a response is **GRANTED**.

> d. *"Did Indiana University ever provide you with training about Title IX?" (Ex. 1, Bomba Sr. Dep. 35:21-36:7)*

This question does not credibly call for incriminating testimony. Whether or not the University provided Dr. Bomba, Sr. with training about Title IX does not bear on whether Dr. Bomba Sr. ever violated Title IX—or whether he could be prosecuted for any alleged violation. Plaintiffs' request to compel a response is **GRANTED**.

> e. *"Dr. Bomba, do you know what Title IX is?" (Ex. 1, Bomba Sr. Dep. 36:9-19)*

This question does not credibly call for incriminating testimony. Courts have consistently rejected blanket claims of privilege. *Shakman*, 920 F. Supp. 2d at 488. This is not a proper assertion of Fifth Amendment privilege. Plaintiffs' request to compel a response is **GRANTED**.

5. **Questions About Knowledge of Student Complaints**

> a. *"Did anyone from I.U. ever tell you that a student athlete had complained about you?" (Ex. 1, Bomba, Sr. Dep. 37:8-19)*

The Court finds the response to this question could credibly elicit incriminating testimony about the appropriateness of the medical care Dr. Bomba, Sr. provided to student athletes at I.U., which is at the heart of this lawsuit and the open investigation. In the context of this case, the Court

disagrees that this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

> b. *"Did any member of the I.U. men's basketball medical team ever tell you that a student athlete had complained about you?" (Ex. 1, Bomba, Sr. Dep. 37:21-38:8)*

The Court finds the response to this question could credibly elicit incriminating testimony about the appropriateness of the medical care Dr. Bomba, Sr. provided to student athletes at I.U., which is at the heart of this lawsuit and the open investigation. In the context of this case, the Court disagrees that this is an innocuous question. Plaintiffs' request to compel an answer to this question is **DENIED**.

> c. *"Dr. Bomba, do you know if any I.U. student athlete ever complained about the prostate examination you performed on every student athlete for whom you did a physical examination?" (Ex. 1, Bomba, Sr. Dep. 38:20-39:8)*

The Court finds the response to this question could credibly elicit incriminating testimony. These digital rectal exams are the heart of Plaintiff's case and presumably, the Monroe County Prosecutor's investigation. Because of the open investigation, the Court gives Dr. Bomba, Sr. the benefit of the Fifth Amendment privilege. *Hoffman*, 341 U.S. at 486. Plaintiffs' request to compel an answer to this question is **DENIED**. Moreover, this is a double question seeking an answer to whether (1) Dr. Bomba, Sr. knows if a student athlete complained about his or her prostate examination and (2) an affirmative answer that Dr. Bomba, Sr. performed a prostate examination on every examination for whom he did a physical examination. Given the context of this case, this question is credibly within Fifth Amendment grounds.

> d. *"Did any student athlete ever complain to you about a member of the I.U. coaching staff, training staff, medical staff, or athletic department staff?" (Ex. 1, Bomba, Sr. Dep. 39:21- 40:9)*

11

The Court will allow this question only as to complaints made to Dr. Bomba, Sr. about individuals other than Dr. Bomba, Sr. With this direction, Plaintiffs' request to compel a response is **GRANTED**.

> e. "Dr. Bomba, do you know if any player ever complained about the digital rectal exams you performed on every student athlete for whom you did a physical examination?" (Ex. 1, Bomba, Sr. Dep. 42:12-42:25)

The Court finds the response to this question could credibly elicit incriminating testimony. Plaintiffs' request to compel an answer to this question is **DENIED**.

> f. "Dr. Bomba, if a student athlete complained to I.U. administration about you or the medical care you provided, would you expect Indiana University to notify you about the complaint and listen to your side of the story?" (Ex. 1, Bomba, Sr. Dep. 43:2-15)

This question does not seek a response that could credibly incriminate Dr. Bomba, Sr. Dr. Bomba, Sr. could respond that he would expect to be notified about a complaint, or that he isn't sure whether Indiana should have notified him. The Court can imagine several follow up questions that would veer into directly protected territory (and Plaintiffs should be cautious about asking any follow up questions, understanding the Court's view), however this question plainly seeks Dr. Bomba, Sr. to weigh in on what he thinks Indiana University would have done in this hypothetical—and Dr. Bomba, Sr. should answer. Plaintiffs' request to compel an answer to this question is **GRANTED**.

> g. "Dr. Bomba, did any Indiana University student athlete ever complain about a digital rectal examination or a prostate examination you performed on them?" (Ex. 1, Bomba, Sr. Dep. 43:16-44:4)

The Court finds the response to this question could credibly elicit incriminating testimony. These digital rectal exams are the heart of Plaintiff's case and presumably, the Monroe County Prosecutor's investigation. Plaintiffs' request to compel an answer to this question is **DENIED**.

12

## IV.

## CONCLUSION

Dr. Bomba, Sr. must sit for his deposition to answer all questions which the Court has granted Plaintiffs' request to compel answers to. The deposition should be taken within **21 days** of this Order. The parties should use the instructions and analysis in this Order as guidance as to how the Court would rule on any disputes regarding relevant, reasonable follow up questions. The Court is hopeful that, given this, the parties can work together at the deposition and avoid additional dispute. The deposition shall be limited to 75 minutes and shall take place at a reasonable location of Dr. Bomba, Sr.'s choosing (including his home, and /or via remote means).

Date: 3/24/2025

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:
To ECF Counsel of Record